## BERRIEN *vs.* WRIGHT and DARDIN.

Where a negotiation for the sale and purchase of lands in Florida was made in that state, but the final agreement, and the notes given for the purchase money, were executed in the state of New York, the notes being payable in Florida; *Held* that the notes were not void for usury, although interest at the rate of eight per cent was reserved.

When a personal contract by its terms is to be performed in another state, and the place of its performance is not chosen with any intention to evade our laws, but because that place best suits the honest intentions of the parties, our usury laws do not apply to it, although it be made and executed here.

Under the statute of limitations, as re-enacted in the code, where a right of action had accrued previous to the code, and the debtor, after the debt became due, departed from the state, and resided out of it, for different periods during a series of years, the successive absences are to be aggregated, in computing the time for the purpose of ascertaining whether the demand is

Berrien *v.* Wright.

barred by the statute. The statute is not confined to the first absence after the cause of action accrues.

If the debtor has not been a resident of, or present in, the state of New York for the term of six years in the aggregate since the maturity of the indebtedness and before the commencement of the action, the statute is not a bar.

The time during which a plaintiff has been restrained by an injunction, from commencing an action, is not to be reckoned; although he has not pleaded that the injunction was served on him. It is sufficient if he had notice of it.

APPEAL by the defendant Wright, from a judgment entered upon the verdict of a jury. The action was brought by the plaintiff as indorsee of the following promissory note:

"*Apalachicola, Oct.* 11, 1841.

On the first of May, 1844, we promise to pay to Lewis Curtis and George Griswold, trustees of the Apalachicola Land Company, or their successors or order, in the city of Apalachicola, eight hundred dollars with interest from date, at and after the rate of eight per cent per annum, for value received.

HENRY M. DARDIN,

ISAAC M. WRIGHT."

Indorsed—"Without recourse. Lewis Curtis, George Griswold, trustees."

The note was one of five for $800 each, the last executed by defendants, as the consideration for a wharf lot in the city of Apalachicola, purchased for the sum of $4000, under a contract between Joseph Delafield, the agent of said company, and the defendants. It was transferred to the plaintiff in payment of a previous debt due him by the company, for professional services.

The plaintiff had a verdict for the amount of the note, with interest, for which sum, with costs, judgment was rendered.

*R. S. Emmet* and *A. L. Robertson,* for the appellant.

*P. Y. Cutter,* for the respondent.

*By the Court,* MITCHELL, P. J. The defendant Wright and one Dardin made their promissory note, signed by each of

them, dated at Apalachicola, (in Florida,) October 11, 1841, whereby they promised to pay on first of May, 1844, to Curtis and Griswold, trustees of the Apalachicola Land Company, in the city of Apalachicola, $800, with interest from date, at the rate of eight per cent per annum. This was indorsed, without recourse, to the plaintiff. The defendants interposed among other things an answer, setting up the statute of limitations. The plaintiff replied, and the defendants demurred to so much of the reply as related to the statute. The demurrer was heard at a special term, and decided in favor of the plaintiff. Issues of fact were also joined; on these there was a trial before a jury, and a verdict was given for the plaintiff. Exceptions were taken by the defendants. The case now presents, for consideration, both decisions.

The only exceptions properly made at the trial were those relating to the question of usury. The whole evidence on that subject was the note and the following facts : Wright and Dardin were, when the notes were given, residents of Apalachicola ; Curtis and *Griswold* were residents of New York. This, with four other notes, was given as part of the consideration money of lands in Apalachicola, bought by Wright and Dardin of the company. The contract for the purchase of the lands was proved. "The *negotiation* for the sale of the lands was made and *completed* with Joseph Brown, in Florida ; but the final agreement was *made*" (in the words of the witness) " and the notes signed in the city of New York." The note was made (says the same witness) at the office of the company, in the city of New York, at the time of making the contract of October 11, 1841, which contract was made at the same time and place. There was no evidence of any desire of making a sham sale as a cover for a loan. On the contrary, the object of appointing trustees was to effect sales of lands which had been held by various owners, but with such complicity as to their respective rights, that it was difficult for them to sell. As the negotiation for the sale of the lands was not merely commenced, but was *completed* in Florida,

Berrien *v.* Wright.

(with Joseph Brown, the agent of one of the parties, probably of the company,) all the terms of the contract must have been then agreed on, and would include what lots were to be sold, at what price, on what credit, and at what interest. A negotiation could not be *completed* until all these matters were agreed on expressly or by implication. The witness, therefore, when he said that the negotiation was completed in Florida, but the final agreement was made, and the notes signed in New York, must have meant that the contract was reduced to form in New York, and the notes signed here; not that any part of the *terms* of the agreement was here settled, so as to vary from those which were settled in Florida. By "agreement made" in New York, in connection with the rest of his evidence, he must have intended "agreement executed there."

The state of Florida allowing 8 per cent interest on contracts, there was no usury in the original agreement made in Florida, and the contract under it would be valid here, although reduced to writing here. The court was therefore right in *refusing* to charge that the note having been made and delivered within this state, was void for usury; also in refusing to charge that the note having been given for part of the purchase money of the lot, and the contract and note having been made here, the reservation of 8 per cent interest rendered the note void.

The court was requested to charge, that the fact that land in Florida formed the subject matter for which the note was given, was *immaterial* on the question of usury. If the lands had been in this state, it would have raised some grounds to argue that the contract was negotiated in Florida, to evade our laws; it was material, therefore, that the lands were in Florida.

The court was requested to charge that the note having been given in the state of New York, to residents thereof, according to a contract made in this state, and more than legal interest being reserved, the jury might find as a fact

that it was given as a *cover* for forbearance of more than legal interest. There was no evidence from which the jury could find that there was any cover. The transaction was all open and above concealment; the interest agreed on was openly stated in the very note on which the action was founded; there was nothing to raise a suspicion, even, that a sale of lands was resorted to as a cover for the loan of money. This and the two preceding requests speak of the " contract made" in this state. An exception is to be regarded as using words as a lawyer would use them. Under the evidence the contract was not made in New York; only the instrument describing it was made here. That was immaterial; if it could be considered that there was any doubt as to whether the witness did not mean that all the terms of the agreement were arranged in Florida, that would have been a question for the jury, and not to be assumed by the party excepting.

The judge charged the jury, that if the *contract* upon which the note was given, was *bona fide* intended to be performed in Florida, and was made in reference to the laws of that state, then such note was not usurious, though *made* in the state of New York and purporting to bear 8 per cent interest on its face. The judge here apparently disregards the fact proved in the case, that the negotiations for the contract were previously completed in Florida. That made the plaintiff's case very clear, and made any such charge as this last unnecessary. He might have charged the jury that there was no evidence of usury on the facts undisputed in the case; and when he may make a general charge, in favor of one party, he may also state the same conclusion, whether his reasons be right or wrong. For this reason the charge is not exceptionable. It is also correct in point of law. Every instruction of a judge to a jury must be considered in connection with the admitted or incontestible facts in the case. If among those is to be included the fact that the whole negotiation was completed in Florida, there could be no objection to the charge. If that is not be included, in its full extent, the

best that can be said for the plaintiff is, that a negotiation originated in Florida for the purchase of lands, and was carried on and in some sense completed there; that the parties then meeting here perfected their agreement here, which in good faith was intended to be performed, not here, but in Florida; and that it was made in relation to Florida lands, and in reference to the laws of Florida. As a general rule, a contract is to be construed by the laws of the place where it is to be performed : here, the performance, by the very terms of the note, was to be in Florida. If we would not allow the title to lands here to be affected by an agreement to pay interest beyond what our laws allow, even if the agreement provided for the payment of interest and principal in another state, that would be because no law but our own can affect our mode of passing title to, or incumbering our lands. But this is a personal contract, and the lands are not here, but in Florida. The contract would be good in Florida ; it does not demand more than the laws of that state allow on mortgages of land. By the mode of presenting the question to the jury, they were to find that there was usury, if the transaction was not made *bona fide*. These circumstances are as strong as those in the case of *Curtis and others* v. *Leavitt, receiver of North Am. Trust Co.*, (15 N. Y. R. 1,) to exempt the contract from the operation of our usury laws. (*See opinion of Comstock, J., p.* 51, &c.)

I am of opinion that the broad proposition may be sustained that when a personal contract, by its terms, is to be performed in another state, and the place of its performance is not chosen with any intention to evade our laws, but because that place best suits the honest intentions of the parties, our usury laws do not apply to it, although it be made and executed here. Of course there would be a presumption of an intent to evade our laws, until some explanation should be made. There is, therefore, nothing in the exceptions to reverse the judgment.

As to the statute of limitations, the facts are to be gath-

ered from the pleadings. The note became due May 4, 1844; it was made in the city of New York: the defendant Wright paid $300 on it, as alleged in the answer, and as the reply admits and alleges; these stating that the payment was on the 9th of February, 1848. The summons was served 30th August, 1851, on the defendant Wright. The demurrer insists " that the reply of the said plaintiff to the defense set up in the answer of this defendant, that this action was not commenced against the defendant within six years, &c. is insufficient." This includes every part of the reply which may bar the plea, and so includes the allegation that the payment on the note was made on the 9th of February, 1848. That would be a complete bar to the statute.

The reply was regular in this case, since the code, before the amendment of 1852 allowed a reply where the answer contained new matter constituting a *defense* or set-off. (§ 153, [131,] *Voorhees' Notes.*) But the plaintiff in his reply sets up other matters as a bar to the statute, and these are also admitted by the demurrer. The whole time from 4th May, 1844, when the note fell due, to 30th August, 1851, when the summons was actually served, was seven years, three months and twenty-six days. In the first part of November, 1844, Wright departed from this state and became a resident of Florida, and continued there, and absent from New York, to 1st April, 1845. Again, about 1st November, 1845, he departed from this state and became a resident of Florida, and continued absent from this state until about the 1st of April, 1846. Again, about 1st November, 1846, he in like manner absented himself from New York and became a resident of Florida, until about 1st June, 1847; and in like manner from 1st November, 1847, to 1st April, 1848. Thus the aggregate of his absences was one year and ten months. In the mean time an injunction order was issued out of this court on behalf of this defendant, " by which this plaintiff (in the words of the reply) was restrained from taking any proceedings to enforce payment of said note." In October, 1850, during the pending of the in-

Berrien *v.* Wright.

junction, Wright in like manner absented himself and resided in California. The injunction therefore continued two years and a half. While Wright was in California the plaintiff, on 15th May, 1851, (after the injunction was vacated,) placed a summons in the hands of the sheriff of New York, with directions to serve it, and with the intention to have it served as soon as Wright should return to this state. Afterwards another was issued to the sheriff of Saratoga, and served by him on 30th August, 1851. The plaintiff alleges that the defendant was not a resident of, or present in, the state of New York, for the term of six years in the aggregate, after the maturity of the note and before the commencement of this action.

The code retains the statutes of limitations which were in force when it was adopted, where the right of action had already accrued, according to the subject of the action and without regard to the form. (*Code,* § 73.) The revised statutes therefore apply. Those statutes required the action to be brought within six years after the cause of action accrued : but provided, 1st, that if at the time *when* the cause of action accrued against any person, he was out of this state, the action might be commenced within six years after his return to the state ; and 2dly, that " if after the cause of action shall have accrued against any person, he shall depart from and reside out of this state, the *time of his absence* shall not be deemed or taken *any part* of the time limited for the commencement of such action." (2 *R. S.* 297, § 27.) The defendants insist that the statute does not apply to successive absences, but only includes the first absence after the cause of action accrued. This does not comport either with the object of the act, which was to give a plaintiff the same time for suing his debtor, who absented himself from this state, which it gave against one who remained permanently here ; nor does it satisfy the words used. He who leaves the state and resides out of it a second and a third time after a cause of action accrues, as unquestionably leaves it each of those latter times, as when he first left it. The section quoted was intended to reach all cases : first, the

case where one was out of the state when the cause of action first accrued, and next, the case where one who was not here when the cause of action first accrued comes here and leaves it, no matter how often he leaves.   The language is general ; " the time of his absence shall not be deemed or taken as *any part* of the time limited."   Similar language is used where one is stayed by an injunction :  " the time during which such injunction shall be in force shall not be deemed any portion of the time in this chapter limited."   (2 *R. S.* 299, § 35.)   No one would contend that if an injunction was obtained and then dissolved, and afterwards another injunction obtained and perhaps continued for six years and then dissolved, the time covered by the successive injunctions would not be excluded from the statutory time.   Similar language is used as to the time during which a plaintiff is prevented from suing because he was an alien enemy ; (2 *R. S.* 298, § 32 ;) " the time of the continuance of such war shall not be deemed any part of the respective periods limited."   Even without this express provision, the time of war was excluded ; did not the statute clearly mean to include successive wars ?   The language is also similar as to persons privileged, as members of the legislature or of congress ;  " the time during which the action shall have been so prevented, shall not be deemed any portion of the time limited," &c.   (2 *R. S.* 299, § 37.)   Certainly it was as important to include the time when the debtor a second time was in attendance as a member of congress or of the legislature, as when he first went there. .  The language is very different as to persons under disabilities.   It applies only to those who are under disability at the time the cause of action accrued, and they are to bring their actions within the respective times limited after such disability removed.   It thus excludes every disability that arises after the cause of action accrues.

This view of the statute agrees with the *opinion* of McKissock, J., in *Burroughs* v. *Bloomer,* (5 *Denio,* 535, 6 ;) and with what seems *probably* to have been the *opinion* of the chancellor in *Didier* v. *Davison,* (2 *Barb. Ch. R.* 488 ;) and

with the decision in the superior court in *Ford* v. *Babcock,* (2 *Sand.* 530 ;) where the latter court strives to disenthral itself from the decisions of the supreme court as now organized.    It differs from the decision in *Dorr* v. *Swartwout,* before Nelson, J., in the United States circuit court, reported 5 *Legal Observer,* 172, and from the *opinion* of Willard, J., in *Cole* v. *Jessup,* (2 *Barb. S. C. R.* 315.)    *Dorr* v. *Swartwout* is said to have been since overruled by the United States court. (*See* 2 *Sand. S. C. R.* 530.)    But *Cole* v. *Jessup* overlooked the opinion in *Burroughs* v. *Bloomer,* and the decison in it was for the *plaintiff.*   It also falls into a natural error of treating the law as to *disabilities* of plaintiff, (which relates to matters personal to them,) as if it were the same as the law as to the acts or condition of the *defendant.*    The language of the statute as above shown is different in the two cases.    The language also is different, where the defendant is absent at the time when the cause of action first accrues, and when he departs from the state *after* the cause of action accrues.    In the first case it is that the *action is to be commenced* within the six years *after the return* of the defendant to this state : in the other the language is changed, and is *not* " that the action is to be commenced after the return," but that " the *time* of the *absence* shall not be *any part* of the time limited."    There must have been a motive for the change of phraseology, which is quite intelligible, whether the latter clause apply to successive absences only where the defendant was *here* when the cause of action accrued, or also to such absences where he was *absent* when the cause first accrued.

The time during which the injunction was in force, was also sufficient to bar the statute.    But the defendant objected that the plaintiff was not now to be benefited by the injunction because he had not pleaded that the injunction was served on him.    If an injunction is issued by the court at the instance of the defendant, as this was, and kept by him until it is *vacated,* which must have been on motion of this plaintiff, it does not lie in the mouth of the party obtaining it to say it

was not "in force." A defendant in an injunction suit who obeys its mandates without a service of the injunction is not to suffer on that account. It is in force as to him if it is brought to his knowledge, although he may not be liable to an attachment for contempt unless a formal service be made. The allegation in the reply that the *plaintiff was restrained* by the injunction from taking any proceeding, is more than a statement that an injunction with such words issued. It is that it issued and the plaintiff himself was restrained by it. That could only be by some service of the injunction which prevented his prosecuting his action.

The judgment in favor of the plaintiff should be affirmed, with costs.

[NEW YORK GENERAL TERM, December 22, 1857. *Mitchell, Clerke* and *Davies,* Justices.]