## Colin Campbell, et al. v. Mary White.

*Married women: Liability on contracts.* It is competent for a married woman
while residing with her husband, to become personally liable, so as to charge
her separate estate for family necessaries purchased for and actually used in
the husband's family and homestead.—*Tillman v. Shackleton*, 15 *Mich.*, 447,
—cited and approved.

*Statute of limitations: Mutual and open account: Non-residence, and absence from
the state: Residence: Domicil.* Items of credit to defendant entered on plain-
tiff's books for goods or money "returned," have no tendency to prove
the existence of a mutual and open account between the plaintiff and defend-
ant, within the meaning of § 5361 *Comp. Laws.* Such entries denote merely
that the transactions to which they relate are stricken out of the account
entirely.

Neither absence from the state, nor residence out of it, will, of itself, sus-
pend the running of the statute of limitations within the meaning of § 5369
*Comp. Laws*: both must exist to take the case out of the statute. Where the
absence has not been continuous, the different occasions when the debtor has
been within the state,—if his presence were sufficiently notorious, or con-
tinued for such length of time as would afford the creditor, by the exercise
of reasonable diligence, a fair opportunity to subject the debtor to the service
of process,—may be reckoned together, and during the period thus computed,
the statute will run; it being the legislative intent that the operation of
the exception should be concurrent with the existence of the obstacle which
prevents a service upon the debtor.

Residence out of the state, in order to take a case out of the statute of
limitations, must be something more than a mere place of abode; it must
be the *domicil* of the party, which can only be in one place; and it must
have the incidents, which may vary under different circumstances, but which
determine the place of his *home*, which he has adopted with the intention
of remaining, and to which, when he is absent, he intends to return.

*Heard October 27, 1870. Decided January 4.*

Error to Wayne Circuit.

This was an action of *assumpsit* brought by Colin
Campbell, Thomas Linn and Robert Hosie in the Circuit
Court for the county of Wayne against Mary White. The
plaintiffs declared upon the common counts; and the
defendant pleaded the general issue and gave notice of the
statute of limitations.

The cause was tried by a jury on the ninth day of
March, A. D., 1870; the plaintiffs' evidence tending to
prove, that from the year 1860, until the time of the trial,

the plaintiffs have been dry goods merchants in the city of Detroit; that in 1860 and from that time until about November 1st, 1867, defendant resided in the city of Detroit and was the wife of John Drew until about May, 1862; that she was at that time living with him and their children, and was then and has ever since continued to be the owner of real estate in the city of Detroit; that during the first part of the year 1860, defendant purchased goods of plaintiffs, which were charged to her husband, John Drew; that in the year 1860, prior to July 1st, said John Drew gave plaintiffs notice that he would not pay for any more goods purchased by defendant; that plaintiffs at that time informed defendant of the notice her husband had given, and told her that all the goods which she got thereafter should be charged to her; that she assented thereto, and promised verbally to pay for all goods she should thereafter purchase; that defendant was to have a credit on the goods she purchased until the end of each six months during which they were purchased; that from July, 1860, to November, 1861, defendant purchased goods at the store of plaintiffs, amounting to more than seven hundred dollars, of which about two hundred dollars were purchased from July 1st to November 1, 1861, which were charged to her by plaintiffs on their books, which were all articles of family use, for the use of members of her husband's family, as well as herself; that she repeatedly promised to pay for the same, but neglected to do so; that thereafter defendant purchased no more goods of plaintiffs on credit until September, 1865; that from this last date and before August, 1866, defendant purchased of plaintiffs about seventy-five dollars worth of goods, which were charged to her on the books of plaintiffs in the same account with those previously purchased; that defendant admitted her liability, and offered payment for these last goods; that there had been no settlement of

the previous account, or agreement as to its amount; that there were items on the credit side of the account of defendant, one of August 15, 1860, for a rosette returned, one of March 4, 1861, for a pair of blankets returned, one of February 6, 1862, for cash returned, one in 1866 for a bonnet marked as returned, but that no bonnet was charged to defendant in the account, previous to the credit for a return; that on or about the first day of November, 1867, defendant removed her residence to Windsor, in Canada (now the province of Ontario), where she has resided ever since.

The defendant offered evidence tending to prove that during the years 1860 and 1861, defendant was residing in Detroit with her husband, John Drew, and children, and that the goods she purchased at that time of plaintiffs were articles of and for family use, and were used by the children of the said John Drew, and that she never promised to pay for said goods, and that no credit was ever agreed upon or promised to her on the sale of said goods; that after she removed from Detroit in 1867, to Canada, she resided for over a year in Windsor and was frequently in Detroit, and in plaintiffs' store, and collected the rents from her real estate in Detroit, in person, and managed the same.

The plaintiffs' counsel requested the circuit judge to charge the jury:

*First.* That if the jury find from the evidence, that the goods, charged in plaintiffs' account during the years 1860 and 1861, were furnished on defendant's credit, and with her knowledge and assent charged to her at that time, she became legally liable therefor.

*Second.* That if the jury find from the evidence, that the items charged to defendant in 1860 and 1861 were never settled, or the amount agreed upon between the parties until the items charged in 1865 and 1866, the whole

constitutes one open continuous account within the meaning of the statute of limitations.

*Third.* That the time in which defendant has been absent from and resided out of the state, must not be counted as a part of the period prescribed by the statute of limitations, even though she was frequently in the state and had property there during the period of her absence. Which requests the circuit judge refused, and the plaintiffs excepted.

At the request of the defendant the circuit judge charged the jury:

*First.* That for so much of the goods sued for as the jury find, were sold to defendant while she was living with her husband, John Drew, and were articles of family use, the plaintiffs cannot recover in this action.

*Second.* That the account sued by plaintiffs is not a mutual and open account within the meaning of the statute of limitations, and plaintiffs can only recover for such items as appear to have been sold within six years before defendant's removal out of the state, unless there was a credit given for six months.

*Third.* That if the jury find that defendant, while she resided at Windsor, was regularly in the habit of frequently coming to Detroit openly and without concealment, she did not reside out of and remain absent from the state within the meaning of the statute of limitations. To which the plaintiffs excepted. The jury found a verdict for the plaintiffs for seventy-two dollars and eighty cents; and judgment being entered thereon the cause comes into this court by writ of error.

*Walker & Kent,* for plaintiffs in error.

I. A married woman, possessed of sole property, is liable

for family supplies purchased by her expressly on her own credit, though at the time residing with her husband.— *Tillman v. Shackleton,* 15 *Mich.,* 447.

II. The account sued upon was a mutual and open account current within the meaning of § *5365 of the Comp. Laws.* It was an open account current, because never closed or settled. The long time which intervened between the different parts of the account does not prevent the whole from being considered as one account. To make an account mutual, it is not necessary that it should be kept by both parties.—*Chambers v. Mack,* 25 *Penn. St.,* 296 ; *Kimball v. Kimball,* 16 *Mich.,* 217. It is enough, though on one side the account consists of but a single item.— *Penniman v. Rotch,* 3 *Met.* (*Mass.*), 216 ; *Abbott v. Keith,* 11 *Vt.,* 525 ; 2 *Vt.,* 146, 369. There are several credits to defendant in plaintiffs' account, some of which are for the return of specific articles sold, one of which, however, is for an article not charged in the previous account, and which is beyond question an item sold by defendant to plaintiffs, and is enough of itself to make the account mutual.

III. The removal of defendant to Windsor, Canada, on the first day of November, A. D. 1867, and her subsequent continued residence in Canada, prevented the statute of limitations from running after the date of her removal, notwithstanding she might have been in Detroit frequently thereafter on visits.—*Effinger v. Hudson,* 33 *Miss.,* 449. The proposition stated depends upon the construction of § *5369, Comp. Laws.* In favor of the view for which we contend, are the following cases : *Burroughs v. Bloomer,* 5 *Denio,* 532 ; *Gaus v. Frank,* 36 *Barb.,* 320 ; *Berrien v. Wright,* 26 *Barb.,* 208 ; *Didier v. Davison,* 2 *Barb. Ch.,* 477 ; *Chenot v. Lefevre,* 3 *Gilman* (*8 Ill.*), 637.

CAMPBELL *v.* WHITE.

*D. B. & H. M. Duffield,* for defendant in error.

I. The question is, whether a married woman, when living with her husband, is liable for the price of family articles ordered by her for her husband's household, even though they were with her knowledge and assent charged to her. If she is liable at all it can only be by virtue of the act of 1855.—*Comp. Laws, pp. 966 and 967.* It may be contended by plaintiff in error, that this question has been disposed of by the case of *Tillman v. Shackleton, 15 Mich., 447;* but we insist not. That case decided only that the purchase of articles of furniture to be used in the wife's separate and individual business of keeping a boarding-house, was a contract in relation to the wife's separate estate, *Christiancy, J.* holding distinctly that the business of keeping a boarding house was separate estate. The case at bar presents the question whether a married woman's contract for the purchase of articles, which were never intended to become her separate property, but were for family use, shall be held binding upon her. We submit that a wife is not liable upon a contract made by her for the *purchase* of separate property.—*Howe v. Wildes, 34 Maine, 566.* Neither does the fact that a married woman has separate property and is pecuniarily responsible, make her liable on a contract in which credit is given to her, unless the subject matter of the particular contract has reference to her separate estate.—*Dissenting opinion of Morgan, J., in Barton v. Beer, 35 Barb; Tate v. Dederer, 18 N. Y., 265; 22 N. Y., 450; Jones v. Crosthwaite, 17 Iowa, 393; Rodemyer v. Rodman, 5 Iowa, 426; Glover v. Alcott, 11 Mich., 470.*

II. The account was in no sense a mutual and open account current, within the meaning of *Comp. Laws, p. 1407, § 5365.* The bill of exceptions shows that all the

account, except about seventy-five dollars, was purchased
between July, 1860, and November, 1861; that she bought
no more goods of plaintiffs until September, 1865, and then
only seventy-five dollars' worth. The only credits are for
goods returned, and they are not credits at all. The stat-
ute contemplates *both* an open and mutual account, which
must be continuous. There is no mutuality nor continuity
in this account, but a lapse of four years between the pur-
chase of any items. The following authorities, we submit,
settle the point conclusively in our favor: *Angell on Lim-
itations* (*2d Ed.*), *135; Hallock v. Lover, 1 Sandf., S. C.
R., 220; Kimball v. Brown, 7 Wend., 322; Chipman v.
Bates, 5 Vt., 143; Bennet v. Davis, 1 N. H., 19; Blair
v. Drew, 6 N. H., 236; Belles v. Belles, 7 Halsted, 12
(N. J. Law), 320; Buntin v. Lagon, 1 Blackf., 373;
Gold v. Whitcomb, 14 Pick., 188.*

III. Our statute, *Comp. Laws*, § *5369,* requires an
"absence from," as well as a "residence out of" the state,
to save the running of the statute.

The bill of exceptions shows defendant resided only over
the river, that she collected rents from her real estate in
Detroit, in person, and managed the same, and was fre-
quently in Detroit, and in plaintiffs' store. The "absence
from" the state contemplated by the statute, clearly is such
as would prevent service of process; and the sole reason of
the exception is because plaintiff is deprived of his remedy
by his inability to commence suit. The New York cases
are under a materially different statute, which requires only
a departure from any residence out of the state to come
within the exception.

It has been repeatedly held, that an open and notorious
return to the state, without a residence there, will set the
statute in motion, and this even in New York.—*Ford v.
Babcock, 2 Sand., 518; Dorr v. Swartwout, 5 N. Y. Leg.*

CAMPBELL *v.* WHITE.

*Observer* ; *Byrne v. Crowninshield, 1 Pick., 262 ; Little v. Blunt, 16 Pick., 359 ; Fowler v. Hunt, 10 Johns., 464.*

GRAVES, J.

This case is considered as presenting three general questions for decision.

*First.* Whether a married woman residing with her husband and owning a separate estate, can be held liable for merchandise purchased by herself on her individual credit and sole agreement to pay for it, in case the items belong to the class of family necessaries and are actually used by the husband's family and in his household.

*Second.* Whether the account which the evidence tended to prove in this case, was an open mutual account current within the meaning of § *5365, Comp. Laws.*

*Third.* The legal bearing and effect of the visits of Mrs. White to Detroit under the circumstances stated in the record.

The first question must be answered in the affirmative, and upon the grounds stated by my brother Cooley, in *Tillman v. Shackleton, 15 Mich., 447.* In the present case, as in that, the liability of the wife was consequent upon her obtainment of the goods on her sole credit and individual promise to pay for them, and was therefore contemporaneous with such obtainment and not conditional upon the kind of use to which the goods should be subsequently put. Her right to acquire upon her own credit, was complete when the articles were obtained.—*Darby v. Callaghan, 16 N. Y., 71 ; Knapp v. Smith, 27 N. Y., 277 ; Draper v. Stouvenel, 35 N. Y., 507 ;* and her liability to the vendors was not contingent upon her ownership of other separate estate, or on the character of the goods bought, or the nature of their immediate or ulterior disposition ; but it

22 MICH.—24.

existed, if at all, when the property was obtained on her exclusive credit and individual agreement. Her promise to pay for the articles was an undertaking to pay for her separate property, and one she was competent to make.— *Stewart v. Jenkins, 6 Allen, 300; Labaree v. Colby, 99 Mass., 559;* and if the goods had been immediately lost or destroyed by the purchaser, her liability for the price would have been as perfect as though she had used them for the benefit of her pre-existing separate estate. Of course, the principles which apply here can bear no relation to the doctrine of those cases where goods furnished to the wife or family, or at the instance of the wife, are considered as furnished to the husband, or at his expense.

*Second.* As the facts are stated in the bill of exceptions, it appears that Mrs. White made an account of about five hundred dollars between July, 1860, and July, 1861, which was increased by another series of purchases between the latter date and November 1, 1861, to about seven hundred dollars, and that between September, 1865, and May, 1866, another bill of seventy-five dollars was made; that on the 15th of August, 1860, she was credited on plaintiffs' books with a rosette returned; on the 4th of March, 1861, with blankets returned; on February 6, 1862, with cash returned, and in 1866 with a bonnet returned; but that no charge appeared on the plaintiffs' books of an earlier date than this last item for a bonnet sold. The necessary inquiry here is as to the import of these entries. Those showing the return of the three articles of merchandise, clearly implied, in the absence of evidence to the contrary, that whatever, if anything, had occurred respecting a sale of the articles named, it was considered as extinguished and blotted out, and there is no room for contending that those entries either implied or indicated a re-sale of the goods to the plaintiffs or their reception by the latter as

payment on account. The entry of cash returned had no tendency to show a lending to the plaintiffs or payment on account. It implied at the utmost that the money had first passed from the hands of the plaintiffs to those of the defendant for some purpose, and then back again to the plaintiffs, and it cannot be admitted that when it went into the hands of defendant it was an item in the class of family necessaries to which the evidence referred everything on the debit side of the account. The only reasonable inference from the entry is, that the transaction to which it related did not blend with the general dealing which formed the matter of account, but was an isolated and independent one which was completely closed and canceled by the return, so as to leave the parties in the same position as though the defendant had never received the money at all. These credit items, as they are called, were not therefore such matters of account, as, when taken with the debit items, would constitute a *mutual account*, within the meaning of the statute. They should be taken as denoting merely that certain accommodations were extended by the plaintiffs to the defendant which might have eventuated in making the defendant permanently liable for the things returned, but which were so closed after all as to give rise to no legal eventualities whatever. See *Stickney v. Eaton, 4 Allen, 108.*

*Third.* On this branch of the case there is reason to suppose that some misapprehension has existed as to the exact question presented for decision. The plaintiffs' request to charge, which was refused, assumed that the defendant resided out of the state, and in effect maintained that the time of her presence here while her foreign residence continued, could not be counted as part of the statutory period of limitation. But the charge given in compliance with the request of defendant proceeded on the idea

that the point in dispute and to be decided was, whether a residence out of the state within the meaning of the statute was established by the facts, and in reference to this the jury were told "that if they found that the defendant, while she resided at Windsor, was regularly in the habit of frequently coming to Detroit openly and without conceal- ment, that *then she did not reside out of and remain absent* from the state, within the meaning of the statute of limitations."

This theory of the charge, however, is not supported by the case; according to the bill of exceptions as framed, the fact of defendant's residence in Canada was not con- troverted. By the statement there made, the evidence for the plaintiffs tended to prove "that on or about the first day of November, 1867, the defendant *removed* her *residence* to *Windsor, in Canada,* where she has resided ever since," and the evidence for defendant tended to prove "that after she *removed* from *Detroit, in 1867, to Canada,* she resided *for over a year in Windsor,* and was frequently in Detroit and in plaintiffs' store." The real subject in dispute was not, therefore, it would seem, whether her residence was in Michigan or Canada, during her sojourn in the latter, but whether, assuming her residence to have been in Canada from a date subsequent to the rise of the cause of action, her visits to Detroit during the continuance of her foreign residence affected the running of the statute, and if so, how? The question thus presented arises under the last branch of § *5369 Comp. Laws,* which provides that " if after any cause of action shall have accrued the person against whom it shall have accrued shall be absent from and reside out of the state, the time of his absence shall not be taken as any part of the time limited for the com- mencement of the action." The terms of this provision at once suggest a meaning different from that contended for

by either party. The condition upon which the suspension of the statute depends, requires the concurrence of two facts, namely: residence out of the state and absence from it; and without the conjunction of these elements the condition will be incomplete. If the specific language of this paragraph be adhered to, the time of the debtor's absence cannot be deducted when he resides here, nor the time of his residence elsewhere when he is not absent. If the time limited for bringing suit is not to run while the condition for suspending it is made complete by the concurrence of the facts of non-residence and absence, and the suspension is to cease and the time to run while the condition is incomplete by the non-resident debtor's *non-absence* from the state, it would seem to follow that the statute will neither admit the view of plaintiffs' counsel, that the length of the foreign residence *alone* must measure the deduction, or that of defendant's counsel, that no other period of absence is to be deducted than such as may have preceded the debtor's first public return to the state. The counsel for the plaintiffs, however, very much relied on *Burroughs v. Bloomer, 5 Denio, 532,* as supporting the position that residence abroad was alone sufficient to prevent the running of the time limited for bringing suit, while *Dorr v. Swartwout,* in the *Circuit Court of the United States, N. Y. Leg., Obs., 270,* was cited by defendant's counsel, it would seem as authority for the proposition that the time will commence running on the debtor's first public return, and thence continue running notwithstanding any subsequent departure, and they might have cited *Randall v. Wilkins, 4 Denio, 577,* and *Cole v. Jessup,* as reported in *2 Barbour's Sup. C. R., 309,* to the same point.

In *Burroughs v. Bloomer,* it was held that successive absences might be accumulated and deducted, and it was likewise thought that the expressions " and reside out of

the state" and the "time of his absence" were identical in meaning, and consequently that the non-residence itself would be an "absence" which would continue the suspension, even though the debtor, while non-resident, should spend a portion of his time openly in the state. While this case stands approved as authority upon the point first mentioned, the view taken by it in favor of constructive absence has not only failed to receive judicial approbation, but is plainly repudiated. In *Ford v. Babcock, 2 Sandf. Superior Court R., 518,* which has obtained the character of a leading case, the court (*p. 531*) expressly withhold their assent from this novel doctrine, and the reasoning in several later cases in the same state does not accord with it.—*Berrien v. Wright, 26 Barb., 208; Cole v. Jessup, 6 Selden (10 N. Y.), 96.*

In Maine and Massachusetts, where the statute is precisely like our own in this regard, a broad distinction is recognized between "residing out of the state," and being "absent from the state." In *Langdon v. Doud, 6 Allen, 423, 425,* the court say "absence from the state" is clearly not sufficient to suspend the operation of the statute. The provision is explicit that the time of a debtor's absence shall be deducted from the time limited for the commencement of the action, only in case "he is *absent from and resides* out *of the state.*" See also *Drew v. Drew, 37 Me., 389; Ruckmaboye v. Mottichund, 32 E. L. & E., 85,* likewise bears on this point. In this case, which was one before the privy council, on appeal from the supreme court of Bombay, it was held that the words "beyond seas" in the English statute were synonymous with the words "out of England," and not to be interpreted literally, and that there was no such thing as a constructive inhabitancy within the jurisdiction. It is only necessary to add in disposing of the point now being considered, that it will appear by reference

to *Burroughs v. Bloomer*, that the same process there employed to show that notwithstanding the debtor's public appearance in the state for a considerable period, he should by construction of law be considered as constantly absent in consequence of his foreign residence, may be equally employed to show that his presence here should, by construction, make him a resident notwithstanding the existence of facts proving him to be a non-resident. For assuming the ground which is insisted on in *Burroughs v. Bloomer* to warrant the conclusion there stated, that the expressions "reside out of the state" and "absent from the state" are of *equivalent meaning*, the one consequence may as readily follow as the other.

As therefore the ground of the reasoning in this case, relative to the operation of the statute in the particular in question, appears to lead with equal directness and force to repugnant results, it cannot be sound.

The position of defendant's counsel, adopted chiefly on the strength of *Dorr v. Swartwout*, but also maintained by *Randall v. Wilkins* and *Cole v. Jessup* in the supreme court, that on the first return to the state by the non-resident debtor, the time limited for commencing suit will run without further suspension being caused by subsequent departures, is certainly untenable. Our statute was copied from that of Massachusetts at a time when their law had reached the form, in which we copied it, by successive modifications, and it is therefore not unreasonable to cast an eye to the previous changes there made in order to discern clearly the direction taken by legislation and the end apparently contemplated. An examination of the course of Massachusetts on this subject will show that the drift has been in favor of extending rather than contracting the exception to the English statute, and that concurrently with that tendency there has been another to graduate the

exception by the obstacles to service on the debtor rather than by the place of his residence. It is also observable that in New York and several other states the statute has been altered from time to time in the same spirit, while the bent of judicial opinion in the best considered cases in those states in which the law has been thus moulded has manifestly coincided with this general tendency in legislation.

This circumstance is not wholly unimportant when the construction urged on one side would greatly restrict the exception, and that suggested on the other would make the absence of obstacles to the personal service of process a fact of little or no consequence. Recurring to the decision in *Dorr v. Swartwout*, it is said to have been overruled in the same court (*Ford v. Babcock, pp. 530, 531; Berrien v. Wright, 26 Barb., 217*). But whether it has been or not, it is shown to have been founded on an erroneous view of the statute and to be without authority.—*Burroughs v. Bloomer; Ford v. Babcock; Cole v. Jessup*, in the court of appeals (*6 Selden*); and *Gilman v. Cutts, 3 Foster (23 N. H.), 376.* The case of *Randall v. Wilkins*, in so far as it agrees with *Dorr v. Swartwout*, was disregarded in that branch of the case of *Burroughs v. Bloomer*, which has subsequently been approved and followed, and was expressly overruled in *Ford v. Babcock, Wright v. Berrien*, and *Cole v. Jessup*, in the court of appeals, and the decision in *Cole v. Jessup* in the supreme court, reported in the *2d Barbour*, and agreeing with *Dorr v. Swartwout*, was reversed in the court of appeals, as reported in *6 Selden*.

The able decisions opposed to *Dorr v. Swartwout* have completely overthrown the rule laid down in that case, and in so doing have materially aided in establishing the contrary one. And it may now be considered as settled by the clear weight of authority, that successive absences may be

accumulated and deducted from the time limited for bringing suit, and reciprocally that successive visits to the state may be reckoned as periods in which the time so limited will continue running. But a further question arises as to whether these visits to have such effect must not be distinguished by peculiar conditions. As, by the terms of the enactment it is the time of the debtor's "absence" which is to be deducted, a literal reading would imply that any *non-absence*, however fugitive and temporary, or in other words, the mere personal presence of the debtor for a moment any where within the territorial limits of the state, would cause the time to run against the creditor for the period of such visit. But this view, it would seem, has never been accepted. The courts appear to have held without exception that a literal construction would be so unreasonable as to preclude the belief that the legislature ever intended it. They have therefore invariably decided that in order to cause the time limited to commence running, the return of the debtor must be such as to allow the creditor an opportunity to subject him to the jurisdiction of the state courts. A brief reference to a few of the principal cases bearing on this point will suffice to show the course of decision on the subject. In *White v. Bailey, 3 Mass., 271*, the court say that the statute "in providing that the limitation should commence on the debtor's return into the state, must *intend* such a return as would enable his creditor, using reasonable diligence, to arrest his body as security for the debt." In *Fowler v. Hunt, 10 J. R., 465*, the court observed as follows: "The word 'return' applies as well to persons coming from abroad, as to citizens of this state going abroad and then returning. The coming from abroad must not be clandestine and with an intent to defraud the creditor by setting the statute in operation and then departing. It must be so public and under such cir-

cumstances as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting the debtor." The supreme court of New Hampshire, in *Shapley v. Felt, 3 N. H., 121,* recognized the same view by saying it was "not doubted that a return of a debtor from which the statute of limitations begins to run must be such a return as will enable his creditor, using reasonable diligence, to arrest his body." The opinion of the court in *Byrne v. Crowninshield, 1 Pick., 263,* and in *Little v. Blunt, 16 Pick., 359,* is equally explicit. In the former, the court say that "by a return within the government must be meant such a return as will give a party reasonable opportunity to commence an action," and in the latter "that the return to the state to set the statute in motion must be such that the creditor must know, or by reasonable diligence have the means of knowing that the debtor is within the commonwealth." All the later cases in Massachusetts and New Hampshire which allude to the point, appear to sanction the same doctrine. The case of *Randall v. Wilkins, 4 Denio, 577,* which as to this question has not been disparaged, sustains the view taken in *Fowler v. Hunt,* and the latter case seems also to have met the approval of the superior court in *Ford v. Babcock,* and of the court of appeals in *Cole v. Jessup.*

From the foregoing and many other cases, it may be taken as having been well settled that the object of the legislature in qualifying the operation of the statute by the fact of the debtor's absence or non-absence from the state was to allow or prevent the running of the time limited for bringing suit, when the creditor should, or should not, in consequence of the circumstances, have a fair opportunity to subject his debtor to the jurisdiction of the proper court of the state. And considering the tenor of the authorities and the object of the clause in question,

the rule which alone appears admissible, is that a temporary non-absence, or, in other words, a return in order to cause the time limited for bringing suit to commence and keep running during his stay, must be shown by the debtor either to have been actually known to the creditor, and to have been so long continued and under such circumstances after such knowledge, as to have enabled the creditor by reasonable diligence to have subjected him to the jurisdiction of the proper state court; or else to have been so notorious and protracted and so identified with some locality, as to show that the creditor might by reasonable diligence have learned of the debtor's return or non-absence ; and by the like diligence after such fact could have been learned, might have subjected him to the jurisdiction as before stated.

Having now disposed of all the questions, which as this record is constituted are regularly raised, this opinion would naturally close here.    But as the charge of the circuit judge, pursuant to the request of defendant's counsel, appears to have assumed that the controversy before the jury made it necessary to decide whether, upon the evidence relating to defendant's residence, she was or was not a resident of Michigan within the meaning of the statute, and since that question may be seriously agitated on another trial, it is thought expedient to notice it at this time.

In order to ascertain the correct meaning of the phrase "and reside out of the state," it is essential to keep in view the nature and object of the general provisions, and the end aimed at by the qualification.    The act, of which this expression is part of a qualifying section, is designed to close the courts against a creditor by prescribing a time beyond which he shall not commence suit against his debtor if the latter see fit to insist on the lapse of time as a bar ; and the clause, of which the passage in question with that

about absence from the state is the pith, forms an exception to the general terms of the limitation.

Its obvious purpose is to save from the operation of the general provisions those periods of time when the creditor cannot at his election have the aid of our courts for the commencement of suit in consequence of the debtor's belonging within another jurisdiction, and his not being so within our own as to enable the creditor by reasonable diligence to reach him. And considering the matter in this light, it is reasonable to infer that the legislature meant that this fact of residence, as one by which the running or suspension of the time is to be determined, should be more emphatic and distinct than it would. be if distinguished only as a place of mere temporary sojourn for some transient purpose.

That the term "reside" is used in that sense sometimes imputed to it for the purpose of drawing a distinction between "residence" and "domicil," cannot be admitted. For by the meaning thus ascribed to it, a person may be a resident of more than one country at the same time. As the phrase is employed here, it seems by necessity to imply something single and exclusive, and the reason is strong against reading it in a sense permitting a residence in Michigan and Canada at the same time. To give it that interpretation would make the condition of non-residence either absurd or nugatory. To satisfy the meaning of the legislature, the phrase must be understood as importing something so distinct, definite and fixed as to constitute the party's home, the place of permanent abode, which, whenever left temporarily or on business, the party intends to return to, and on returning to is at home.

This result accords with the view entertained elsewhere of similar questions. In *Langdon v. Doud*, before cited, the supreme court of Massachusetts had occasion to examine

the corresponding provision in their statute, and it was there decided that the language used " did not signify a temporary sojourn or occasional abode," but was synonymous with habitancy or domicil, and contemplated the place where the debtor dwelt or had his home; and the court were of opinion that such construction accorded with " the weight of authority in those states where an exception to the statute of limitations existed similar in its phraseology to " that in Massachusetts and this state " on the subject."

As very pertinent in this connection, a passage in the opinion of Chief Justice Bigelow in that case is worthy of being quoted at length. " It may be added," he said, " that this construction of the statute seems to be the only one which will afford a fixed, permanent and certain rule by which to ascertain whether a particular case is included within or excluded from the operation of the exception to the statute. If residence is not held to signify domicil, it can have as applied to the subject matter, no definite and ascertained meaning; but it would be necessary to vary its interpretation in each particular case, according to the circumstances proved concerning the length of the absence of the debtor from the state, and the objects for which he went away. There would be no standard by which to distinguish whether he could claim the benefit of the statute bar, or was excluded from the operation of the exception." The same idea was enunciated in somewhat different terms in *Chaine v. Wilson, 1 Bos., 673.* The point arose there under the New York attachment law, which authorized an attachment when the debtor resided out of the state. The court, by Bosworth, chief justice, said : " Ordinarily one's residence and domicil (if they do not always mean the same thing) are in fact the same, and where they so concur they are that place which we all mean when we speak of one's home. And it may safely be asserted that

CAMPBELL *v.* WHITE.

where one has a *home,* as that term is ordinarily used and ·understood among men, and he habitually resorts to that place for comfort, rest and relaxation from the cares of business, and restoration to health, · and there abides in the intervals when business does not call,—that is his residence, both in the common and legal meaning of the term. And to one who has such a home and habitually uses it as such, a place of business elsewhere is not his residence, within any proper definition of the term." Some further observations are added as to proof of residence and change of residence, which are too important to be omitted. They are as follows: "When the question, 'Where is his residence?' arises, some of the proofs, or the *indicia,* by which the place is to be determined vary with the circumstances of the party. One has a family, another has none; one lives in a state of alienation and separation from his family, another lives with them; one owns or hires a dwelling-house, another has lodgings at an inn; and another may have a much more uncertain shelter. None of these circumstances are necessarily alone conclusive; they are not decisive tests; they are only aids to an answer to the question to be considered in connection with all other pertinent facts which may appear. So when the fact of residence in a place is ascertained or conceded, it is to be deemed to continue until there is proof of a change of location, with intent to make such location a new home in the sense above already described, not merely for a temporary purpose, but with a fixed purpose to remain, and without a present intention to return when some temporary purpose is accomplished; and again, it is not enough that one intends to change his residence. The intent and the fact of such change must concur. Nor is it enough that he intends to change his residence, and sincerely believes that what he has done amounts in law to a change of his

CAMPBELL v. WHITE.

. residence; his opinion will not affect the question if the actual change have not taken place." See also, *Hinds v. Hinds, 1 Clarke (Iowa), 36; Whicker v. Hume, 7 H. L., 124, 147, 159, 164.*

The opinion entertained of the purpose and meaning of this statute must sufficiently appear without further comment, and as the rulings in the court below were at variance with the views which have been expressed, the judgment must be reversed with the costs of this court and a new trial ordered.

CAMPBELL, CH. J. and COOLEY, J. concurred.

CHRISTIANCY, J. did not sit in this case.