**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JULY 11, 2011

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

No. 140603

RANDALL LEE DOWDY,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

We granted leave to appeal in this case to determine whether homeless sex offenders are obligated to comply with the registration requirement imposed by the Sex Offenders Registration Act (SORA).[1] Specifically, we consider whether homeless sex offenders have a "residence" or "domicile" such that they can comply with the statute's registration requirements. We hold that homelessness is not a bar to compliance with

---

[1] MCL 28.721 *et seq.* SORA has since been amended, see 17 PA 2011; however, those amendments do not apply to this case.

SORA because homelessness does not preclude an offender from entering a police station and reporting to a law enforcement agency regarding the offender's residence or domicile. The Legislature intended SORA to be a comprehensive system that requires all sex offenders to register, whether homeless or otherwise. Therefore, we reverse the Court of Appeals' judgment and remand this case for trial.

## I. FACTS AND PROCEDURAL HISTORY

In 1984, defendant, Randall Lee Dowdy, pleaded guilty to a charge of kidnapping, five counts of first-degree criminal sexual conduct (CSC-I), and a charge of possession of a firearm during the commission of a felony.[2] Defendant remained incarcerated until 2002.

As a consequence of defendant's CSC-I convictions, he is required to register as a sex offender.[3] Defendant signed a form upon being released from incarceration acknowledging that his obligations under SORA had been explained to him. Defendant registered his residence as 430 North Larch, Lansing, Michigan, which is a location of the Volunteers of America (VOA), a homeless shelter.[4] Defendant obtained services at the VOA until the fall of 2006, when the VOA staff discovered that he was a sex

---

[2] MCL 750.349 (kidnapping); MCL 750.520b (CSC-I); MCL 750.227b (felony-firearm). See *People v Dowdy*, 148 Mich App 517, 518; 384 NW2d 820 (1986). Defendant admitted committing "one vaginal, two oral, and two anal" penetrations of his victim. *Id*. at 520.

[3] MCL 28.722(e)(*x*).

[4] The Volunteers of America provides a variety of services for the homeless, including overnight shelters, free meals, counseling services, and employment preparation.

offender. He left the VOA in accordance with its policy barring sex offenders from receiving its services. It appears that defendant was homeless at all times relevant to this case.

In 2006, the Lansing Police Department attempted to verify where defendant was living. According to police records, the last time that defendant reported his residence or domicile, as SORA requires, was in November 2002. In October 2006, the police visited the VOA in a further attempt to verify defendant's information and determined that he no longer received services there. On the basis of these facts, the Ingham County Prosecutor charged defendant with violating the reporting and notification requirements of SORA.[5]

After a preliminary examination, defendant was bound over to the Ingham Circuit Court, where he filed a motion to dismiss the charges. Defendant argued that SORA required him to register an address in order to comply with his statutory obligations, but claimed that because he was homeless and did not have an address, he was unable to comply with the obligation to report a "residence" to police under SORA. The circuit court found these arguments persuasive and dismissed the charges, holding that defendant's homelessness rendered it impossible for him to comply with SORA. The prosecution appealed, and the Court of Appeals denied leave to appeal for lack of merit in

---

[5] Defendant was charged with one count of violating MCL 28.729(1)(a) for failure to notify law enforcement within 10 days after he "change[d] or vacate[d] his . . . residence or domicile" pursuant to MCL 28.725(1) and two counts of violating MCL 28.729(2)(a) for failure to comply with his quarterly reporting requirements pursuant to MCL 28.725a(4)(b).

the grounds presented. On appeal in this Court, in lieu of granting leave to appeal, we remanded the case to the Court of Appeals for consideration as on leave granted.[6]

On remand, a Court of Appeals panel affirmed. The Court reasoned that homeless individuals have neither a residence nor a domicile as SORA defines those terms.[7] The panel explained that "residence" referred to "a place, a dwelling, an abode, where an individual has a 'regular place of lodging,'" and held that "[t]he provisional location where a homeless person happens to spend the night" does not satisfy the dictionary definitions of "lodging."[8] Therefore, the panel held that the statutory language required *only* those sex offenders with a "residence" or a "domicile" to notify law enforcement and that, because the homeless have neither, they cannot comply with the statute's requirements.[9] We granted leave to appeal to consider whether homeless sex offenders can comply with SORA.[10]

---

[6] *People v Dowdy*, 484 Mich 855 (2009).

[7] *People v Dowdy*, 287 Mich App 278, 281-282; 787 NW2d 131 (2010).

[8] *Id*. at 281, quoting MCL 28.722(g).

[9] See *id*. at 282. Curiously, the Court of Appeals panel did not address defendant's quarterly reporting requirement pursuant to MCL 28.725a(4)(b). The Court's opinion only addressed defendant's obligation to notify law enforcement of a changed or vacated "residence" or "domicile" pursuant to MCL 28.725(1).

[10] *People v Dowdy*, 486 Mich 935 (2010).

## II. STANDARD OF REVIEW

Issues of statutory construction are questions of law that are reviewed de novo.[11] "The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature."[12] Courts must construe a statute in a manner that gives full effect to all its provisions.[13] If the language of a statute is clear and unambiguous, this Court must enforce the statute as written.[14] To the extent that constitutional issues are involved, they are also questions of law reviewed de novo.[15] A district court magistrate's decision to bind over a defendant and a trial court's decision on a motion to quash an information are reviewed for an abuse of discretion.[16]

## III. ANALYSIS

### A. THE SEX OFFENDER REGISTRATION ACT

SORA is a conviction-based registration statute that requires individuals convicted of certain "listed offenses" to register as sex offenders.[17] An offender's registration disclosure includes information regarding where the offender lives, identifying

---

[11] *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006).

[12] *Drouillard v Stroh Brewery Co*, 449 Mich 293, 302; 536 NW2d 530 (1995).

[13] *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006).

[14] *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

[15] *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 10-11; 743 NW2d 902 (2008).

[16] *People v Hamblin*, 224 Mich App 87, 91; 568 NW2d 339 (1997).

[17] MCL 28.722(e).

information, and a summary of the offender's convictions.[18]  Offenders are also required to sign a form acknowledging their obligations as sex offenders under SORA.[19]

The Legislature used broad language to describe SORA's scope and intent.  SORA is intended to "better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders."[20]  The Legislature determined that convicted sex offenders—homeless or otherwise—pose a potential serious danger to the safety and morals of the people of Michigan and particularly to the state's children.[21]  SORA is therefore intended to "provide law enforcement and the people of this state with an appropriate, *comprehensive*, and effective means to monitor those persons who pose such a potential danger."[22]  Consistent with this intent, SORA requires sex offenders to comply with a variety of statutory obligations, two of which are at issue here:  (1) the quarterly reporting requirement of MCL 28.725a(4)(b), and (2) the notification requirement of MCL 28.725(1).  Inherent in both obligations is the requirement that a sex offender inform law enforcement regarding the location of the offender's "residence" or "domicile."

---

[18] See MCL 28.727(1).

[19] MCL 28.725a(2).

[20] MCL 28.721a.

[21] *Id*.

[22] *Id*. (emphasis added).

6

All sex offenders convicted of one or more listed offenses that are felonies have an affirmative obligation to report quarterly to a law enforcement agency for "verification of domicile or residence."[23] These offenders "*shall report in person*" to the police between the first and fifteenth day of *each* January, April, July, and October.[24] This quarterly reporting requirement is not contingent on where an offender resides or is domiciled, and all offenders who are not incarcerated *must* comply.

Additionally, all sex offenders have an ongoing obligation to keep law enforcement apprised of changes to their residence or domicile. Specifically, sex offenders "*shall notify* the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile within 10 days after the individual changes or vacates his or her residence [or] domicile . . . ."[25] According to the statute's plain language, a sex offender's obligation to notify law enforcement of a new "residence" or "domicile" is triggered when the offender changes or vacates the previous "residence" or "domicile," not when the new "residence" or "domicile" is established.

After an offender complies with the quarterly reporting requirement pursuant to MCL 28.725a(4)(b), the law enforcement agency to whom the offender reports is under

---

[23] MCL 28.725a(4).

[24] MCL 28.725a(4)(b) (emphasis added).

[25] MCL 28.725(1) (emphasis added). This version of the statute took effect on December 1, 2006. See 2006 PA 402. The previous version of MCL 28.725(1), which was in effect during part of the period in which defendant was charged with violating it, varied in word order but not in substance.

7

an affirmative statutory obligation to verify the information provided by the sex offender.[26] MCL 28.725a(8) directs sex offenders to maintain either a valid driver's license or an official state identification card, either of which may be used as proof of an offender's residence or domicile for purposes of law enforcement verification. However, those are not the *exclusive* means by which an offender may prove residence or domicile to law enforcement. SORA expressly contemplates sex offenders with an uncommon residence or domicile by providing that Michigan State Police "may specify other satisfactory proof of domicile or residence."[27] Thus, if a sex offender is unable to provide any of the statutorily specified documents or the offender's residence or domicile is difficult to confirm, the Michigan State Police is empowered to formulate alternative methods whereby the offender may provide information to verify the offender's residence or domicile.

## B. "RESIDENCE" AND "DOMICILE"

To comply with the statute's registration requirements, sex offenders must provide information regarding their "residence" or "domicile."[28] SORA defines "residence" for "registration and voting purposes" as

> *that place* at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1

---

[26] See MCL 28.725a(6). Law enforcement "*shall verify* the individual's residence or domicile and any information required to be reported" under MCL 28.724a. (Emphasis added.)

[27] MCL 28.725a(8).

[28] See MCL 28.725(1), MCL 28.725a(4), and MCL 28.725a(8).

residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the greater part of the time shall be his or her official residence for the purposes of this act.[29]

Thus, a person's "residence" under SORA is a combination of three things: that place where a person (1) habitually sleeps, (2) keeps personal effects, and (3) has a regular place of lodging.

The words that the Legislature used to define "residence" have a broad scope and contemplate a wide array of "residences." However, the definition of "residence" does not include *every* location where a person might sleep, regardless of the length of the stay. A "residence," for purposes of SORA, is only that place where an offender *habitually* sleeps and establishes *regular* lodging. The Court of Appeals panel in this case held that defendant was relieved of any obligation to comply with SORA because "the concepts of habitually and regularity are antithetical to the circumstances of homelessness," because homeless people do not "have the security of a customary place of lodging" and do not live "within a home."[30]

The Court of Appeals panel erroneously concluded that the homeless were definitionally incapable of having a habitual "residence." This assumption is belied by the facts of this very case, in which the record shows that, at least for a time, defendant's "residence" was listed as the VOA. Nevertheless, the panel's legal conclusion equating a "residence" with a "home" is inconsistent with the statutory definition of "residence" in

---

[29] MCL 28.722(g) (emphasis added).

[30] *Dowdy*, 287 Mich App at 282.

SORA. Nothing in the relevant statutory provision suggests that "residence" is synonymous with a home, a specific street address, or even a physical structure. Rather, the definition of "residence" merely contemplates a "place."[31] Moreover, the Court of Appeals panel presumed that all homeless individuals sleep in a different location every night and can *never* have a regular place of lodging. Such a broad overgeneralization is unjustifiable and factually unsupported, even by the record in this case. It is entirely consistent with SORA for a sex offender to identify, for example, a vacant house or a park as a "residence" if it is, in fact, "that place at which" the sex offender "habitually sleeps, keeps his or her personal effects, and has a regular place of lodging."

Unlike "residence," "domicile" is not defined in SORA. Although this Court has, in several circumstances, treated the terms "residence" and "domicile" as synonymous,[32]

---

[31] Contrary to the dissent's assertions, our discussion of a "place" is not a "judicially derived shorthand definition," *post* at 8; rather, it is simply an application of SORA's plain language. MCL 28.722(g) explicitly defines "residence" as "that *place* at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging." Thus, far from committing an "egregious error," *post* at 8, our analysis simply gives effect to the Legislature's intent by applying the statute's unambiguous language. The dissent misconstrues SORA; although the dissent believes that some homeless sex offenders can be required to register, the dissent would require only those offenders who live in a home, apartment, or homeless shelter to comply with SORA. However, the dissent's analysis ignores the fact that nowhere in SORA exists a requirement that offenders live in a home, or, indeed, any structure at all.

[32] See, e.g., *Gluc v Klein*, 226 Mich 175, 178; 197 NW 691 (1924) ("In this State, the words 'domicile' and 'residence' are treated as synonymous terms. In our statutes relating to voting, eligibility to hold office, taxation, probate and administration of estates, etc., no distinction is pointed out.").

10

the terms were accorded different meanings under the common law.[33]  In SORA, the

Legislature used both "residence" and "domicile" to describe what a sex offender can

register.  Therefore, construing the two terms as synonymous in this case would

effectively render one of the terms nugatory—an outcome courts avoid when construing

the language of a statute.[34]  Accordingly, it is necessary to differentiate between

"residence" and "domicile" for purposes of SORA.

Michigan courts have defined "domicile" as "'that place where a person has

voluntarily fixed his abode not for a mere special or temporary purpose, but with a

present intention of making it his home, either permanently or for an indefinite or

unlimited length of time.'"[35]  Similarly, a domicile is "the place where a person has his

home, with no present intention of removing, and to which he intends to return after

going elsewhere for a longer or shorter time."[36]  More significant to the instant case is

that it has long been the law of this state that "[e]very person must have a domicile

somewhere."[37]  A person may have only one domicile, which continues until the person

---

[33] *Id*. at 177-178 ("Under the common law, there was a distinction between 'domicile' and 'residence.' . . . '[A]ny place of abode or dwelling place,' however temporary it might have been, was said to constitute a residence.  A person's domicile was his legal residence or home in contemplation of law.").

[34]  *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002).

[35] *In re Servaas*, 484 Mich 634, 679; 774 NW2d 46 (2009) (MARKMAN, J., dissenting), quoting *Henry v Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960).

[36] *Hartzler v Radeka*, 265 Mich 451, 452; 251 NW 554 (1933).

[37] *Beecher v Common Council of Detroit*, 114 Mich 228, 230; 72 NW 206 (1897); see also *Gluc*, 226 Mich at 179.

acquires a different one.[38] Thus, the essential characteristic of a "domicile" that separates it from a "residence" is that, under Michigan law, *every* person has a "domicile."[39]

Even if a homeless sex offender with transient sleeping arrangements cannot establish a "residence" as SORA defines it, the offender is still capable of reporting sufficient information regarding where the offender lives for purposes of identifying a "domicile." Although it may be difficult to verify where an offender is domiciled, as noted, difficulties in *verifying* an offender's information do not excuse the offender from *complying* with SORA's requirements. Moreover, SORA enables the Michigan State Police to respond to such situations by empowering it to "specify other satisfactory proof of domicile or residence."[40] Indeed, the Michigan State Police has exercised this statutory authority by promulgating an order that permits homeless sex offenders to register their domicile as "123 Homeless."[41] An offender thus satisfies the offender's statutory obligation by appearing at a law enforcement agency and advising the authorities of where the offender lives. Pursuant to SORA and the Michigan State Police

---

[38] *Beecher*, 114 Mich at 230, quoting Cooley, Taxation (2d ed), p 369.

[39] The dissent's critique of our "domicile" analysis is erroneous. In *Beecher*, the issue was whether the petitioner's residence was located in Detroit or Negaunee. *Beecher*, 114 Mich at 229. Thus, far from equating domicile with a street address, *Beecher* described domicile in terms similar to the Michigan State Police order cited in note 41 of this opinion: by reference to a city. Additionally, the dissent conflates "residence" and "domicile" although the Legislature plainly used the terms in the disjunctive, indicating that the Legislature sought to give the terms discrete meanings.

[40] MCL 28.725a(8).

[41] Michigan State Police, Official Order No. 79, April 27, 2007, p 2.

order, the law enforcement agency can accept as "satisfactory proof" of the offender's "domicile" the state, city, zip code, and county in which the offender lives and must add that information to the "123 Homeless" designation in the registry. Thus, when the homeless sex offender's "domicile" is registered as "123 Homeless" in the city in which the offender lives, that is the offender's statutory domicile for purposes of SORA.[42] Therefore, homelessness in no way prevents a sex offender from complying with the notification obligation pursuant to MCL 28.725(1) either because every person must have a legal domicile or, for practical purposes, because the Michigan State Police has promulgated an order to accommodate homeless sex offenders for the purposes of registration.

The Michigan State Police order does not contravene SORA, and the dissent's arguments to the contrary misapprehend the order's purpose. Although "123 Homeless" is not an actual address, an offender does not violate MCL 28.727(6) when *law enforcement* records the offender's address in this manner.[43] The *offender* complies with

---

[42] Our analysis simply explains *how* homeless sex offenders may comply with their registration obligations under the framework *created by SORA*. Regardless of whether a homeless sex offender is nomadic or has a consistent place of residence, SORA ensures that the homeless sex offender is capable of providing sufficient information to comply with SORA's registration requirements. Our construction is consistent with SORA's stated purpose of creating a *comprehensive* system to monitor sex offenders and is far more faithful to the statute than the dissent's construction, which would defeat this basic goal by categorically allowing offenders who merely *claim* homelessness to opt out of complying with SORA. The dissent would clearly incentivize this conduct.

[43] MCL 28.727(6) provides that "[a]n individual shall not knowingly provide false or misleading information concerning a registration, notice, or verification."

SORA when the offender truthfully reports to the appropriate law enforcement agency that the offender is homeless. The law enforcement agency, in turn, records the reported information in a manner that facilitates the statutorily mandated verification obligation so that the offender's residence or domicile can be confirmed later. Thus, the Michigan State Police order does not subject homeless sex offenders to further prosecution. The order is both authorized by and in compliance with SORA.

The Court of Appeals panel did not address whether defendant had a domicile. Instead, the Court noted that "[d]omicile is not an issue in this case because the parties agree that as a homeless person, defendant has no 'true, fixed, principal, and permanent home.'"[44] Because this Court has long acknowledged that "[e]very person must have a domicile somewhere,"[45] it was error for the panel below to conclude otherwise. Because the determination of where an individual is domiciled is generally a question of fact,[46] we cannot determine where defendant was domiciled and leave this question for resolution on remand. The offender's obligation is to truthfully inform police regarding where the offender's residence or domicile is located, and the police have the separate obligation of verifying that information.[47]

---

[44] *Dowdy*, 287 Mich App at 281, quoting Black's Law Dictionary (8th ed).

[45] *Beecher*, 114 Mich at 230.

[46] See, e.g., *Servaas*, 484 Mich at 680 (MARKMAN, J., dissenting).

[47] We recognize the practical difficulties of registering an offender who is homeless, claims to be homeless, or otherwise has a nontraditional residence. That any of these circumstances exist, however, does not provide license for an offender to flout the mandates imposed by SORA. Additionally, as noted, the burden of accommodating these

## IV. APPLICATION

## A. THE QUARTERLY REPORTING REQUIREMENT

Defendant argues that he is categorically excused from the statutory obligation because it is "impossible for homeless offenders to comply" with SORA, as homeless sex offenders conclusively lack either a "residence" or a "domicile." Defendant also argues that prosecuting him for failing to comply with an impossible obligation violates his constitutional right to due process of law. We conclude that both arguments are unpersuasive.

Defendant has made no compelling claim that his homelessness rendered it impossible for him to comply with MCL 28.725a(4)(b). This provision requires sex offenders, such as defendant, to perform the physical act of reporting in person to law enforcement four times per year. This provision in SORA is unconditional and contains no exceptions or exclusions for homelessness. Moreover, it applies regardless of the stability of where an offender resides or is domiciled. This absolute reporting obligation arises from the offender's status as a sex offender and the potential danger the offender poses to the people of Michigan.[48] Therefore, defendant was required to report in person to a law enforcement agency four times per year and to provide the authorities with truthful information.

atypical circumstances and verifying the offender's information falls on the governmental body charged with ensuring that an offender who seeks to comply with his registration and notification requirements can, in fact, do so.

[48] MCL 28.721a.

15

Despite this clear mandate, there is no evidence suggesting that defendant *ever* complied with his obligation to report in person each January, April, July, and October, *even during the time* defendant's registered residence was at the VOA.[49] In fact, the record shows that *16 quarters* passed without defendant *ever* having complied with the quarterly reporting requirement. Defendant has never claimed that it was impossible for him to appear in person at a police station. Defendant's perceived difficulty, it seems, concerns the quality of information he contends he *would* have given to the police *had* he made an in-person appearance. However, any difficulty verifying the truthful information provided by defendant is the responsibility of law enforcement and does not negate defendant's responsibility to appear to report in the first instance. The lower courts erred by ignoring the mandatory nature of SORA's quarterly reporting requirement.

## B. THE NOTIFICATION REQUIREMENT

When the police attempted to verify defendant's registration information in October 2006, the investigating officer determined that defendant no longer received services at the VOA. Because defendant had registered his residence as the VOA in Lansing, and because defendant was no longer permitted to receive services there, his "residence" had been "vacate[d]" or "change[d]."[50] From the date defendant no longer

---

[49] Counts II and III of the Information charged defendant with failing to comply with his quarterly reporting duties in July 2006 and October 2006, when defendant's registered residence was at the VOA in Lansing.

[50] MCL 28.725(1).

16

resided at the VOA, he had 10 days to notify the Lansing Police, the Ingham County Sheriff, or the local post of the Michigan State Police that his registered residence or domicile was no longer accurate. According to the record, after leaving the VOA, defendant never made any attempt to notify a law enforcement agency of the change. Even if defendant had difficulty in identifying his new residence or domicile, he was nevertheless obligated to notify the authorities that his residence or domicile had changed. Nothing in the text of SORA suggests that homelessness is an excuse for an offender's failure to comply with the act. Therefore, because it was certainly possible for defendant to notify law enforcement that he had changed his residence or domicile, and because defendant made *no effort* to do so, the lower courts erred by dismissing the charges.

We note further that there is no evidence in this case that defendant *attempted* to comply with his reporting or notification obligations and was prosecuted for failing to provide *sufficiently specific* information. In fact, the contrary is true. At defendant's preliminary examination, the following exchange occurred:

> *The Court*: So you're telling me that [defendant] went [to the police station] and tried to report that he was homeless and they wouldn't take the report?
>
> [*Defense Counsel*]: No, Your Honor, I'm saying he does not have an obligation to report anything if he doesn't have an address to report.

This case would be different if defendant had gone to a law enforcement agency, attempted to notify or report that he was a homeless sex offender, and was turned away and subsequently prosecuted. That did not occur here. Our holding that homeless

17

offenders must comply with the statute's reporting and notification requirements, combined with the record evidence indicating that defendant made absolutely *no effort* to comply with either requirement, is sufficient to resolve the present case.

The dissent would permit a sex offender to escape any obligation to comply with SORA if the offender merely *claims* homelessness. The dissent argues that, *as a matter of law*, defendant could not comply with *any* of his obligations under SORA. The practical and egregious consequence of this conclusion is that if an offender unilaterally decides that he is homeless, that offender can simply ignore SORA and is no longer required to comply with MCL 28.725a(4)(a) or (b)[51] or MCL 28.725(1).[52] Because the dissent would relieve homeless sex offenders of the obligation even to enter a law enforcement agency and inform the authorities that the offender is homeless, there is no way for law enforcement agencies to confirm the veracity of the offender's claim—creating an incentive for noncompliant sex offenders to claim homelessness once law enforcement ultimately finds them.[53] Indeed, in the months immediately following the

---

[51] MCL 28.725a(4)(a) and (b) require an offender to report to local law enforcement or to the State Police annually or quarterly depending on the offender's crime.

[52] MCL 28.725(1) requires an offender to report to local law enforcement or to the State Police within 10 days after the offender changes or vacates the offender's residence or domicile.

[53] The dissent argues that our opinion enables offenders with a home to falsely report as homeless. However, one need only read SORA's language to conclude that the dissent's claim lacks merit. If an offender dishonestly reports to law enforcement that the offender is homeless, the offender has "knowingly provide[d] false or misleading information concerning a registration, notice, or verification" and has violated SORA. MCL 28.727(6). Our opinion applies SORA's requirement that all sex offenders *must* report

18

release of the Court of Appeals' decision, the number of sex offenders claiming homelessness increased by 62 percent.[54] As noted previously, the stated purpose of SORA is to enable law enforcement and the public to monitor sex offenders. Applying a "modicum of common sense,"[55] it is difficult to imagine a conclusion that does more harm to this purpose than to enable the very people targeted by SORA to determine *for themselves* whether they must comply with the statute's requirements.[56]

## V. CONCLUSION

By enacting SORA, the Legislature created a broad, comprehensive registration statute. The lower courts failed to give effect to the plainly expressed intent of SORA, which is to enable law enforcement and the public to monitor sex offenders. All sex offenders can, and therefore must, comply with the reporting obligations and notification requirements outlined in the statute. An offender's homelessness in no way prevents that offender from physically entering a law enforcement agency and truthfully reporting to the authorities information regarding the offender's residence or domicile. It was clear

---

and that they must report truthfully. Far from incentivizing false reporting, our opinion requires *all* sex offenders to comply with SORA and to do so truthfully.

[54] See McVicar, *Since court ruled homeless sex offenders don't have to register, number claiming homelessness jumps 62 percent*, Grand Rapids Press, available at <http://www.mlive.com/news/grand-rapids/index.ssf/2010/05/since_court_ruled_home less_sex.html> (accessed July 7, 2011).

[55] *Post* at 7.

[56] SORA is only "purge[d]" of "any meaning," *post* at 18, when the targets of the registration scheme—sex offenders—are permitted to determine whether they will comply with SORA's *mandatory* requirements.

19

legal error for the lower courts to excuse defendant's complete failure to comply with SORA. Therefore, because the Court of Appeals panel interpreted SORA in a manner contrary to the plainly expressed intent of the Legislature and because defendant made *no effort* to comply with his reporting obligations, we reverse the Court of Appeals' judgment and remand defendant's case to the Ingham Circuit Court for proceedings consistent with this opinion.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

20

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

No. 140603

RANDALL LEE DOWDY,

       Defendant-Appellee.

_____

MARILYN KELLY, J. (*dissenting*).

At issue in this case is whether defendant, a homeless person who is subject to the Sex Offenders Registration Act (SORA),[1] violated the act when he failed to report a residence or domicile. The majority concludes that homelessness does not prevent compliance with SORA. Accordingly, it reverses the judgment of the Court of Appeals, which held that homeless individuals have neither a "residence" nor a "domicile" as those terms are used in SORA.[2] For the reasons I will detail, I believe the Court of Appeals

_____

[1] MCL 28.721 *et seq.* On April 12, 2011, the Legislature amended SORA, including the definition of "residence" germane to this appeal. See 2011 PA 17. However, those amendments do not apply to this case given that defendant was charged with violating SORA in its previous form.

[2] To the extent that the Court of Appeals' holding can be construed as definitively precluding application of SORA's registration and reporting requirements to all homeless sex offenders, I believe that it erred. However, the majority commits the same error by reaching the opposite conclusion—that SORA's registration and reporting requirements categorically do apply to all homeless sex offenders. The more nuanced question in this appeal is whether *this* defendant could be criminally charged for his alleged failure to comply with SORA.

properly held that, as a matter of law, defendant could not have complied with SORA's registration and reporting requirements. Accordingly, I dissent.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1984, defendant pled guilty of kidnapping, first-degree criminal sexual conduct (CSC I), and felony-firearm. Under the terms of his plea agreement, he was sentenced to a mandatory two-year term for the felony-firearm conviction, followed by concurrent 10- to 20-year terms for the kidnapping and CSC I convictions. The Court of Appeals affirmed the judgment.[3]

When defendant was released from prison in November 2002, he signed a form that set forth his reporting obligations under SORA. He provided "430 North Larch, Lansing, Michigan" as his address, which is the location of a homeless shelter operated by Volunteers of America (VOA). Apparently, defendant never resided at the VOA. Rather, as the senior manager for social services at the VOA testified, defendant was at the shelter only for meals. When the manager became aware that defendant had listed the VOA as his address for purposes of SORA registration, she advised him that he was ineligible for VOA services. Defendant did not return to the VOA, and he remained homeless at all times relevant to this case.

Law enforcement agencies often run verification tests to determine whether persons required to register and report under SORA have complied. In 2006, Lansing police performed such a test and learned that defendant had failed to report as required.

---

[3] *People v Dowdy*, 148 Mich App 517; 384 NW2d 820 (1986).

An officer visited the VOA in an attempt to verify defendant's location, but was told that defendant had "moved out."

Consequently, defendant was charged with five criminal counts alleging failure to comply with SORA. Notwithstanding that the complaint and an entry on a preliminary data sheet show defendant as "homeless" and with "no address," the information lists his address as the VOA's Larch Street address. Following the preliminary examination, the Ingham Circuit Court bound him over on the charged offenses. Defendant then filed a motion to dismiss the charges, arguing that his homelessness rendered him incapable of complying with SORA's requirement that he report a "residence" to law enforcement. The trial court agreed with him and dismissed the charges. The Court of Appeals denied the prosecution's application for leave to appeal for lack of merit. But we remanded the case to the Court of Appeals as on leave granted.[4]

On remand, the Court of Appeals affirmed the trial court.[5] It held that, because defendant had neither a residence nor a domicile at which to register, he could not comply with the reporting requirements of SORA.[6] The Court of Appeals reasoned that the location where a nomadic homeless person spends the night does not fall within the ambit of SORA's definition of "residence." The Court concluded that the Legislature had written SORA's reporting requirements for persons who have a domicile or residence. It

---

[4] *People v Dowdy*, 484 Mich 855 (2009).

[5] *People v Dowdy*, 287 Mich App 278; 787 NW2d 131 (2010).

[6] *Id*. at 281-282.

3

urged legislators to consider changes to SORA to make it possible for the homeless to comply.

We granted the prosecution's application for leave to appeal.[7]

### STANDARD OF REVIEW AND LEGAL BACKGROUND

Generally, a trial court's ruling on a motion to quash an information is reviewed for an abuse of discretion.[8] However, the trial court's ruling in this case was based on its interpretation of SORA, which raises an issue of statutory interpretation. The proper interpretation of a statute presents a question of law, which we review de novo.[9]

It is not often that the Legislature expressly includes the purpose of an act in its provisions. Yet it did just that in writing SORA, providing in MCL 28.721a:

> The legislature declares that [SORA] was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

---

[7] *People v Dowdy*, 486 Mich 935 (2010).

[8] *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991).

[9] *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289, 297; 791 NW2d 897 (2010).

When we interpret a statute, our goal is to give effect to the intent of the Legislature.[10] The first step in ascertaining its intent is to consider the language of the statute itself. Generally, the words provide the most reliable evidence of the Legislature's intent, and, as far as possible, we give separate meaning to every phrase, clause, and word.[11]

At issue in this case is the scope of SORA's provisions mandating registration and reporting. Specifically, defendant was charged with violating SORA by failing to notify law enforcement of a change in his residence or domicile. He was also charged with failure to comply with SORA's quarterly reporting requirements. Those requirements are set forth in MCL 28.725 and MCL 28.725a.

During most of the period in which defendant was charged with violating MCL 28.725(1), it provided, in relevant part:

> Within 10 days after any of the following occur, an individual required to be registered under this act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the [state police] department post of the individual's new residence or domicile:
>
> (a) The individual changes or vacates his or her residence, domicile, or place of work or education . . . .[12]

MCL 28.725a(4) provided, in relevant part:

---

[10] *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007).

[11] *Petersen v Magna Corp*, 484 Mich 300, 307; 773 NW2d 564 (2009).

[12] This provision was amended effective December 1, 2006; however, the amendment did not affect the substantive requirements applicable to defendant in this case. See 2006 PA 402.

5

> [F]ollowing initial verification . . . or registration . . . , an individual required to be registered under this act who is not incarcerated shall report in person to the local law enforcement agency or sheriff's department having jurisdiction where he or she is domiciled or resides or to the department post in or nearest to the county where he or she is domiciled or resides for verification of domicile or residence as follows:
>
> \* \* \*
>
> (b) If the person is registered for 1 or more felony listed offenses, not earlier than the first day or later than the fifteenth day of each April, July, October, and January following initial verification or registration.

Thus, defendant's potential criminal liability under SORA hinges on whether he changed, or failed to quarterly report, a residence or domicile.

## DEFENDANT DID NOT HAVE A "RESIDENCE" FOR PURPOSES OF SORA

The majority errs in its interpretation of SORA in numerous respects. First, it erroneously concludes that defendant, who was homeless at all times relevant to the charges that he failed to report, had a "residence" for purposes of the act. SORA specifically defines "residence" at MCL 28.722(g) as "that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging."

Thus, to establish a "residence," all three parts of the definition must be satisfied. As to the first, "habitual" is defined as "of the nature of a habit[.]"[13] A "habit" is (1) "an acquired pattern of behavior that has become almost involuntary as a result of frequent repetition," (2) "customary practice or use," or (3) "a particular practice, custom, or usage[.]"[14] The second and third parts are self-explanatory in that they require a

---

[13] *Random House Webster's College Dictionary* (2001).

[14] *Id.*

6

"residence" to be a regular place of lodging where a person keeps his or her personal effects.

Defendant was unable to satisfy any part of the definition, let alone all three. When one applies the dictionary definitions of these terms and a modicum of common sense, it becomes obvious that defendant had no "residence" as that term is used in SORA. He had no habitual place at which to sleep. He had no place at which he kept his personal effects. Nor did he have a regular place of lodging.

A park bench, highway underpass, or steam grate may qualify as a place where a homeless individual sleeps, but they hardly qualify as a "regular place of lodging" under the statute. As the Court of Appeals astutely observed,

> the concepts of habitually and regularity are antithetical to the circumstances of homelessness. If there is anything "habitual" to the sleeping arrangements of the homeless, it is that it is customary for them not to have the security of a customary place of lodging. If there is anything "regular" about the place where a homeless person lives, it is that it is not within a home.[15]

The majority misinterprets this passage as equating a "residence" with a home. It does no such thing. The Court of Appeals merely pointed out that the homeless generally do not have a place at which they habitually sleep, keep their personal belongings, and customarily lodge. Hence, they often lack a "residence" under SORA.[16] To the extent

_____

[15] *Dowdy*, 287 Mich App at 282.

[16] I do not believe that all homeless sex offenders are incapable of registering and reporting under SORA. For example, homeless sex offenders may have a "residence" or "domicile" pursuant to SORA if they stay at the home of a relative, friend, or at a shelter. These offenders might easily be considered homeless in that they lack what is traditionally considered permanent housing. But their accommodations would nevertheless satisfy SORA's definition of "residence."

7

that these criteria are traditionally associated with a home, the Court of Appeals was simply applying the Legislature's chosen definition of "residence."

The majority commits an even more egregious error by stating that "the definition of 'residence' merely contemplates a 'place.'"[17] This judicially derived shorthand definition aids the majority in holding that a vacant house or park qualifies as a residence under SORA. But the term "place," standing alone, is not found within the relevant provisions of the act. Instead, SORA enumerates three criteria that must be satisfied for a "place" to be considered a "residence." Those are the criteria that the majority fails to faithfully apply. Simply put, applying MCL 28.722(g) as written, defendant did not have a "residence."

DEFENDANT DID NOT HAVE A "DOMICILE" FOR PURPOSES OF SORA

The majority next errs by perverting the legal definition and application of the term "domicile." The word "domicile" is not defined in SORA. However, because

---

The majority claims, *ante* at 10 n 31, that I "would require only those offenders who live in a home, apartment, or homeless shelter to comply with SORA." That is manifestly incorrect, as evidenced by my preceding analysis. Unlike the majority, I would apply MCL 28.722(g) in its entirety and require registration for those offenders who have a "residence" as defined by SORA as "[a] place *at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging*." (Emphasis added). Whether a "residence" is a "home, or, indeed, [a] structure at all," *ante* at 10 n 31, is immaterial. And contrary to the majority's reading of my dissent, nothing I have written here stands for the proposition that, to be subject to SORA's requirements, an offender must live in a home or structure. I have simply applied the unabridged definition of "residence" as provided by the Legislature.

[17] *Ante* at 10.

8

"domicile" has acquired a peculiar meaning under the law, we should construe and apply the word according to that meaning.[18]

Numerous cases have discussed the concept of domicile. In fact, for more than 160 years, the Court has defined "domicile" as a person's "permanent home."[19] This definition is consistent with Black's Law Dictionary (9th ed), which defines "domicile" as "the place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

As the majority acknowledges, the terms "domicile" and "residence" have often been used interchangeably and synonymously.[20] In *Campbell v White*, this Court approvingly quoted the following passage:

---

[18] See MCL 8.3a, which provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

[19] See, e.g., *In re High*, 2 Doug 515, 523 (Mich, 1847) ("Domicile has been defined to be the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning[.]"); *Henry v Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960) ("[A domicile is] that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.") (citations and quotation marks omitted).

[20] See, e.g., *Cervantes v Farm Bureau Gen Ins Co*, 478 Mich 934, 936 (2007) (MARKMAN, J., dissenting); *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 495; 274 NW2d 373 (1979).

"Ordinarily one's residence and domicile (if they do not always mean the same thing) are in fact the same, and where they so concur they are that place which we all mean when we speak of one's home. And it may safely be asserted that where one has a *home*, as that term is ordinarily used and understood among men, and he habitually resorts to that place for comfort, rest and relaxation from the cares of business, and restoration to health, and there abides in the intervals when business does not call—that is his residence, both in the common and legal meaning of the term."[21]

The majority trumpets the proposition that every person has a domicile. Under our centuries-old caselaw, that would be true only if every person had a permanent home. Unfortunately, that postulation is belied by reality, and, what is more important in the context of this case, SORA makes no such assumption. In support of its analysis, the majority selectively cites one sentence from *Beecher v Common Council of Detroit*[22] for the proposition that every person has a domicile, while omitting the next sentence. In its entirety, the relevant portion of *Beecher* provides:

> Every person must have a domicile somewhere. The domicile is acquired by the combination of *residence and the intention to reside in a given place*, and can be acquired *in no other way*. The residence which goes to constitute domicile need not be long in point of time. If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile.[23]

---

[21] *Campbell v White*, 22 Mich 178, 197 (1871), quoting *Chaine v Wilson*, 14 NY Sup Ct 673; 8 Abb Pr 78 (1858).

[22] *Beecher v Common Council of Detroit*, 114 Mich 228; 72 NW 206 (1897).

[23] *Id*. at 230 (emphasis added; citations omitted). In *In re High*, this Court wrote that "every man must have . . . a *national* domicile somewhere." *High*, 2 Doug at 523 (emphasis added). In other words, one cannot be a man without a country. But the Court recognized that a domicile was "defined to be the habitation fixed in any place without any present intention of removing therefrom[.]" *Id*. Therefore, domicile must be established through residence, but residence "is not indispensable to retain domicile after it has been once acquired[.]" *Id*. Thus, the Court recognized a distinction in scope between domicile and residence.

10

Hence, to establish a domicile, a person must first establish a residence.[24] Thus, the case the majority cites for the proposition that every person must have a domicile made the proposition contingent on the underlying assumption that the person first had a residence. And as previously discussed, given that defendant did not have a residence, then by definition he did not have a domicile as that word is used in SORA. Consequently, the majority's claim that defendant must have a domicile for purposes of SORA is legally unsupported.[25]

Perhaps more alarming, the majority does not engage in an analysis of whether defendant has a "domicile" under any definition of that term. Rather, it states as an ipse

---

[24] The majority's chosen definition of "domicile" supports this conclusion. For example, it states that Michigan courts have defined "domicile" as "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Ante* at 11 (citations and quotation marks omitted). "Abode" is defined as "a place in which a person resides; residence; dwelling; home." *Random House Webster's College Dictionary* (2001). Thus, there is a two-step process to establishing a domicile, the first of which is establishing a residence.

[25] The majority also claims that the Michigan State Police order allows the police to "accept as 'satisfactory proof' of the offender's 'domicile' the state, city, zip code, and county in which the offender lives . . . . Thus, when the homeless sex offender's 'domicile' is registered as '123 Homeless' in the city in which the offender lives, that is the offender's statutory domicile for purposes of SORA." *Ante* at 12-13. This is simply false. The Michigan State Police order provides, in relevant part, "If the offender is homeless, the generic address of '123 Homeless' shall be entered into the computerized database, along with the offender's city, state, zip code, and county code." Michigan State Police, Official Order No. 79, issued April 27, 2007 (MSP Order), p 4. The order does not state that this information constitutes an offender's domicile (or residence). Nor is there *any* authority, be it caselaw, statute, or otherwise, that establishes that a state, city, zip code, and county constitute a domicile. Therefore, those generic locations may furnish evidence of an offender's location, but the order cannot trump our binding legal definitions of "domicile."

11

dixit that defendant must have a domicile. It then makes a leap in logic by concluding that "123 Homeless" qualifies as a domicile. This conclusion is unsupported by the majority's cited (but not applied) definition of "domicile" as "the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time."[26] As further explained later in this opinion, a fictitious address does not satisfy any definition of "domicile." The majority opinion is devoid of a meaningful legal analysis with respect to defendant's domicile or lack thereof.

Even assuming, arguendo, that all persons do have a domicile, defendant still could not comply with SORA's registration and reporting requirements. The written form that each convicted sex offender must tender upon registration, Michigan State Police Form DD-004, requires the submission of general offender information (name, date of birth, height, weight, etc.), offense information (offense date, place of crime, conviction type, etc.), and address information.[27] Under the address heading, a convicted sex offender is required to list a "Current Primary Address." The form provides space for two address lines, an apartment or lot number, city, state, zip code, county, and a telephone number. The form also provides for the name of a penal institution if the offender is incarcerated.

---

[26] *Ante* at 11 (citation and quotation marks omitted).

[27] Michigan State Police Form DD-004 (12/2007), available at <http://www.michigan.gov/documents/msp/dd-004_218346_7.doc> (accessed July 7, 2011); see also Michigan State Police Form DD-004R (12/2007), available at <http://www.michigan.gov/documents/msp/dd-004R_218341_7.doc> (accessed July 7, 2011).

Not only was defendant incapable of providing a current primary address pursuant to the form's instructions, but he was incapable of listing a residence or domicile. Those terms are absent from the form, which also fails to instruct an offender how to register if he or she does not have a residence. And given that "residence" and "domicile" have often been considered synonymous in the eyes of the law, this Court cannot reasonably expect the homeless to discern a difference between them.[28]

The majority ignores this practical reality by stating that "difficulties in *verifying* an offender's information do not excuse the offender from *complying* with [SORA]."[29] This distinguishes between verification of a "residence" or "domicile" and compliance with registration and reporting requirements. SORA does not make this distinction. I ask the majority to explain how defendant could have adequately completed the registration form when he had no residence or domicile as the majority itself defines those terms, i.e., as "the place where a person has his home . . . ."[30] This is not a rhetorical question, and its lack of a legally defensible answer should give the majority pause.

---

[28] I further question whether SORA, as applied in this case, is unconstitutionally vague for lack of objective standards or guidelines. Arguably, SORA did not give defendant notice of what conduct was required of him with respect to registration as a homeless individual. See, e.g., *Santos v State*, 284 Ga 514; 668 SE2d 676 (2008), in which the Georgia Supreme Court held that a statutory sex-offender-registration requirement was unconstitutionally vague as applied to homeless sex offenders with no street address for a residence. However, because I believe this case can be resolved on statutory grounds, I do not reach this constitutional issue. See *Smith v Curran*, 267 Mich 413, 418; 255 NW 276 (1934) (indicating that questions of constitutionality should not be decided if a case can be disposed of on other grounds).

[29] *Ante* at 12 (emphasis in original).

[30] *Ante* at 11 (citation and quotation marks omitted).

## THE MICHIGAN STATE POLICE ORDER CONTRAVENES SORA

Defendant's lack of a "residence" or "domicile" aside, the majority relies on the fact that MCL 28.725a(8) empowers the Michigan State Police to "specify other satisfactory proof of domicile or residence" to facilitate compliance with SORA. In what was likely an attempt to remedy the problem of homeless sex offenders who lack a residence or domicile, the Michigan State Police issued an official order indicating that, "[i]f [an] offender is homeless, the generic address of '123 Homeless' shall be entered into the computerized database, along with the offender's city, state, zip code, and county code."[31] The majority seizes on this order as proof that defendant could indeed have complied with SORA by telling police that he was homeless. In turn, the police could then have entered "123 Homeless" in the registry on his behalf. There are several critical flaws in this reasoning.

An agency order is unlawful if it is based on an erroneous interpretation of a statute.[32] Although this Court accords due deference to an agency's interpretation of a statute, we grant no deference to an interpretation that contravenes the language of a statute.[33] Furthermore, when interpreting statutes, we give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute

---

[31] MSP Order, p 4.

[32] *Ass'n of Businesses Advocating Tariff Equity v Pub Serv Comm*, 219 Mich App 653, 659; 557 NW2d 918 (1996).

[33] *Ludington Serv Corp v Acting Ins Comm'r*, 444 Mich 481, 505; 511 NW2d 661 (1994).

14

surplusage or nugatory.[34]  Under SORA, two provisions preclude the listing of 123 Homeless as an offender's address.

The first is MCL 28.727(6), which provides that "[a]n individual shall not knowingly provide false or misleading information concerning a registration, notice, or verification." Without question, the generic address 123 Homeless would be a false and misleading address because that address does not exist in Michigan.[35]  Thus, listing 123 Homeless, which cannot be verified as an address, would violate MCL 28.727(6). Moreover, it would subject those who list it, including a police officer who does so on behalf of a homeless offender, to criminal prosecution. For purposes of MCL 28.727(6), it does not matter if an offender honestly informs the police that he or she is homeless. Even if the offender *is* homeless, a police officer may not lawfully enter into the SORA registry an address that does not exist. Accordingly, the Michigan State Police order contravenes SORA.

The second statutory provision that renders the Michigan State Police order unlawful is MCL 28.725a(8). It requires "individuals . . . registered under [SORA to] maintain either a valid [driver's] license . . . or an official state personal identification card . . . *with the individual's current address*." (Emphasis added.)

---

[34] *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003); see also *Grimes v Dep't of Transp*, 475 Mich 72, 89; 715 NW2d 275 (2006).

[35] A cursory Google Maps search indicates that the only street in the United States named "Homeless Road" is in Kitts Hill, Ohio. Ironically, it does appear that there are homes on that street. In any event, even if 123 Homeless did exist in Michigan, it would still be a false address if an offender who registered it did not live there.

15

However, to obtain a driver's license or state identification card, the Secretary of State requires an applicant to provide at least two documents "with [his or her] name and Michigan residence address."[36] Hence, by the Secretary of State's own requirements, an individual cannot obtain a state identification card absent a valid residential address, which defendant did not have. Nor does the majority, the Michigan State Police, or the prosecutor indicate how a homeless sex offender like defendant could obtain an identification card without a permanent address, much less change an address to reflect transient accommodations.

This analysis is further supported by the Michigan State Police order—the very order flaunted by the majority as proof that defendant could have registered 123 Homeless as his address. The order provides:

> The address on the [sex offender registry] record *must* match the address on the Michigan driver license or Personal Identification Card. If the address does not match, the member shall give the offender the opportunity to immediately visit the nearest Secretary of State branch office for the necessary address change and return to the post to verify their address before taking enforcement action.[37]

Thus, if an offender cannot verify his or her address upon registration, the order requires that the offender be directed to the Secretary of State for an identification card with a valid address. Why? Because MCL 28.725a(8) mandates that the address entered in the sex offender registry match the address on an offender's identification card. But as

---

[36] See the Secretary of State's form "Applying for a license or ID?" available at <http://www.michigan.gov/documents/sos/Applying_for_lic_or_ID_SOS_428_222146_7.pdf> (accessed July 7, 2011).

[37] MSP Order, p 4 (emphasis added).

16

demonstrated earlier, a homeless offender cannot obtain such a card because 123 Homeless is a bogus address. Accordingly, the Michigan State Police order further undermines the majority's analysis.

Applying MCL 28.725a(8) to the facts of this case, contrary to the majority's assertion, the address 123 Homeless will never be sufficient for purposes of SORA. That address cannot match the address on a homeless offender's identification card because a homeless person cannot obtain an identification card to comply with SORA. This Catch-22 highlights the facile nature of the majority's analysis. SORA does not permit registration using 123 Homeless. The majority is unable to refute this fact.

The majority speculates that the approach taken in my dissent would incentivize sex offenders who do have a home to report that they are homeless.[38] It fails to recognize that its opinion is equally susceptible to this conundrum. The majority opines that an offender need report only that he or she is homeless. The police will in turn record that information and enter "123 Homeless" into the sex offender registry.

As indicated in MCL 28.721a, SORA was designed to assist law enforcement and residents of this state in preventing and protecting against the commission of criminal

_____

[38] The online article the majority cites in support of this claim does not offer any verifiable statistics of an increase in allegedly homeless sex offenders. Rather, the article merely credits this increase to the opinion of a single police officer. In fact, the article states that "[p]olice aren't sure how many of Michigan's 260 sex offenders who list themselves as homeless are using the law to avoid registering . . . ." McVicar, *Since court ruled homeless sex offenders don't have to register, number claiming homelessness jumps 62 percent*, Grand Rapids Press, available at <http://www.mlive.com/news/grand-rapids/index.ssf/2010/05/since_court_ruled_homeless_sex.html> (accessed July 7, 2011). In any event, absent real statistics, the majority's claim remains merely speculative.

17

sexual conduct by convicted sex offenders. SORA's registration requirements are intended to provide a comprehensive and effective means to monitor those persons. The registration of a legitimate address that constitutes a residence or domicile that can be verified by law enforcement furthers this goal. Likewise, the public is able to monitor the address of convicted sex offenders by visiting the online sex offender registry, which provides a comprehensive database of offenders' addresses.[39]

But by validating the Michigan State Police order and effectively mandating that homeless sex offenders who do not have a residence or domicile register with 123 Homeless, the majority purges SORA of any meaning. As of today, any convicted sex offender who wishes to keep secret his or her whereabouts may be registered at the fictitious address 123 Homeless. Registration at this fictitious address is tantamount to, and in fact more misleading to the public than, an utter failure to register. Families with young children who visit the online sex offender registry will not be able to learn the whereabouts of these offenders. But they will be able to discern the consequences of this Court's approval of the registration of a fictitious address when they are left wondering where 123 Homeless is. Compliance for compliance's sake is worthless if it provides no valuable practical information.[40] Thus, the majority's criticism of the consequences of this dissent applies with equal weight to its own opinion.[41]

---

[39] The Michigan Public Sex Offender Registry is available at <http://www.mipsor.state.mi.us/> (accessed July 7, 2011).

[40] This is especially true in light of the majority's misinterpretation and misapplication of "residence" and "domicile" as those terms are used in SORA.

[41] The majority mischaracterizes my dissent by claiming that I would allow homeless offenders "to opt out of complying with SORA." *Ante* at 13 n 42; see also *ante* at 18.

18

In sum, because the Michigan State Police order contravenes the language of SORA, it is unlawful. The majority's reliance on that order lacks a meaningful basis in the law and renders two provisions of the act utterly meaningless.

CONCLUSION

I dissent from the majority's decision to reverse the judgment of the Court of Appeals. Not having a residence or domicile, as those terms are used in SORA, is often a sad reality of the homeless. Had they a place where they habitually slept, kept their personal belongings, and regularly lodged, they would no longer be homeless. Because defendant did not have a residence or domicile under SORA, he could not be held criminally liable for failure to register or report. Therefore, the trial court did not abuse its discretion by granting defendant's motion to quash the information.

The majority construes my interpretation of SORA as rendering imperfect the tracking of homeless sex offenders. To the extent that it does so, my interpretation is

---

Nothing in my opinion allows all homeless offenders to opt out of SORA registration. Rather, I would hold that *this* defendant, as a matter of law, could not have complied with SORA because he did not have a "residence" or "domicile" as contemplated by the act.

The majority further errs by claiming, absent any authority, that "SORA ensures that [a] homeless sex offender is capable of providing sufficient information to comply with SORA's registration requirements." *Ante* at 13 n 42. The majority does not cite any statutory language in support of this naked assertion because there is no such language in the act.

steadfastly faithful to the language of SORA.  The majority's is not.  It defies SORA, the Michigan State Police order, and common sense.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway